IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-446-D

| | | |
|---|---|---|
| ORLANDO SOTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| THE TOWN OF ROLESVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On August 9, 2023, Orlando Soto ("Soto" or "plaintiff") filed a complaint against (1) the

Town of Rolesville ("Rolesville"); (2) the Town of Rolesville Board of Commissioners

("Commissioners"); (3) Ronnie Currin ("Currin"), individually and in his official capacity as

Mayor of Rolesville; (4) Kelly Arnold ("Arnold"), individually and in her official capacity as Town

Manager; and (5) Amy Stevens ("Stevens"), individually and in her official capacity as Town

Finance Director (collectively, "defendants") [D.E. 1].[1] Soto alleges violations of Article I, Section

1 of the North Carolina Constitution against Rolesville and the Commissioners, violations of the

Fourteenth Amendment of the United States Constitution under 42 U.S.C. § 1983 against all

defendants, intentional infliction of emotional distress against all defendants, and negligent

infliction of emotional distress against all defendants. See id. at 17–22.[2] On October 12, 2023,

---

[1] Soto states that he is suing Arnold, Stevens, and Currin in their official and individual
capacities. See [D.E. 25] 1. The complaint, however, states that Soto is suing Arnold, Stevens,
and Currin only in their individual capacities. See id. at ¶¶ 7, 9, 11. The court presumes that Soto
is suing Arnold, Stevens, and Currin in both their individual and official capacities.

[2] Plaintiff's counsel failed to accurately number the complaint's paragraphs. Thus, the
court uses page numbers.

defendants moved to dismiss the complaint [D.E. 21] and filed a memorandum in support [D.E. 22].

On November 2, 2023, Soto moved for an extension of time to file a response and an amended complaint [D.E. 23]. On November 8, 2023, Soto filed an amended complaint [D.E. 25]. On November 22, 2023, defendants moved to dismiss the amended complaint [D.E. 26] and filed a memorandum in support [D.E. 27]. See Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(6). On November 27, 2023, Soto responded in opposition [D.E. 28]. On November 28, 2023, Soto filed a motion to amend his complaint with supplemental pleadings [D.E. 29]. On December 11, 2023, defendants replied [D.E. 31]. On December 19, 2023, defendants responded in opposition to Soto's motion to amend the complaint with supplemental pleadings [D.E. 32]. As explained below, the court dismisses as moot defendants' first motion to dismiss, dismisses as moot Soto's motion for an extension of time to file a response to the first motion to dismiss, grants Soto's motion for an extension of time to amend his complaint, grants defendants' motion to dismiss Soto's amended complaint, and denies as futile Soto's motion to amend his complaint with supplemental pleadings.

I.

Soto is a Hispanic man, over the age of 40, who is blind in one eye. See Am. Compl. [D.E. 25] ¶¶ 18–19, 146. In May 2015, the Rolesville Police Department hired Soto. See id. at ¶ 17. In June 2017, Soto became police chief. See id.

In June 2018, Arnold became Town Manager. See id. at ¶ 22. In December 2018, Arnold denied Soto an "across-the-board 5% pay increase" that others "who were similarly situated" received. See id. at ¶¶ 27–28. Soto filed a grievance. See id. at ¶¶ 28–30. In January 2019, Soto prevailed and received backpay and a pay increase. See id. at ¶¶ 30–31.

2

From February 2019 to August 31, 2020, Soto alleges that (1) Arnold told Soto to "learn to dance the salsa"; (2) Arnold demanded Soto meet with him daily without advanced notice; (3) Arnold asked Soto's colleagues about Soto's whereabouts during the work day; (4) Arnold demanded to walk freely around the police department and look into windows observing the offices when Soto was not present in violation of facility procedures; (5) Stevens audited the police department's expenditures, personnel actions, funding, mobile hotspot use, and sale of police vehicles; (6) Arnold monitored reporting times of police department staff; (7) Arnold demanded Soto report his statements to an elected official about the police department; (8) the Commissioners changed the pay scale for an evidence-custodian position; (9) Arnold made a COVID-19 pandemic joke and "the punch line was giving [Soto] the middle finger"; (10) Arnold called on Soto first at every event and meeting in a condescending manner; (11) Arnold critiqued Soto's dress, style of writing, and conduct; (12) Arnold denied knowing any Hispanic people other than "Chicano ranchers"; (13) Arnold recognized four other leaders as a clique; and (14) Arnold bowed his chest out at Soto. Id. at ¶¶ 40–41, 73, 80; see id. at ¶¶ 43–51, 55, 57, 59–60, 65, 68–69, 82–83. Arnold subjected no "other similarly situated official within the Town of Rolesville's structure . . . to racial jokes, daily unannounced visits[,] and the obsessive scrutiny." Id. at ¶ 42; see id. at ¶¶ 75–76.

On August 21, 2020, Soto filed a complaint against Arnold with Currin. See id. at ¶¶ 86–89. In October 2020, in a closed-door session where Soto was not present, Currin and the Commissioners decided to terminate Soto's employment at a future unknown time. See id. at ¶ 98. On October 28, 2020, suffering from "rashes on his hands, loss of facial hair, [and] . . . a lack of presence, depression, and anxiety," Soto resigned "overcome by [Arnold's] continued, provoking, and intimidating behavior, and [Rolesville's] indifference and inaction to prevent harm." See id. at ¶¶ 100–01.

3

On November 12, 2020, Currin, the Commissioners, Rolesville's attorney, and Arnold held an executive session. See id. at ¶ 110. Following the session, the group voted to give Soto an increase in salary and to change his supervisory reporting structure. See id. On December 1, 2020, Soto declined the offer and finalized his termination. See id. at ¶ 118.

On September 16, 2022, Soto requested his personnel file. See id. Soto received it but could not access the file because it was labeled "[t]own [m]anager access only." Id. at ¶ 120. Eventually, Soto accessed the file. See id. at ¶ 121. The file contained Soto's complaint against Arnold. See id. The file also contained a document stating that Arnold's conduct concerning Soto violated Rolesville's policy against harassment. See id. at ¶¶ 121–26. When Soto resigned, Soto did not know that Rolesville investigated his complaint about Arnold and found that Arnold violated Rolesville's policy against harassment. See id. at ¶ 123.

Soto contends that Rolesville constructively discharged him on December 1, 2020. See id. at ¶ 118. Soto seeks relief under North Carolina law and 42 U.S.C. § 1983. See id. at 17–22.[3]

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the

---

[3] Soto incorrectly numbered the paragraphs of his third and fourth claims in his amended complaint. Thus, the court uses page numbers when citing those claims.

4

facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d, 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid.

5

201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

North Carolina law applies to counts one, three, and four in Soto's amended complaint. For those claims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

### III.

### A.

In count one, Soto seeks relief under Article I, Section 1 of the North Carolina Constitution against Rolesville and the Commissioners. See Am. Compl. ¶¶ 132–42. Article I, Section 1 states:

> We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life,

6

liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness.

N.C. Const. art. I, § 1 (emphasis added). The "fruits of labor" clause "applies when a governmental entity acts in an arbitrary and capricious manner toward one of its employees by failing to abide by promotional procedures that the employer itself put in place." Tully v. City of Wilmington, 370 N.C. 527, 535–36, 810 S.E.2d 208, 215 (2018). Section 1 does not, however, create a property interest in at-will employment contracts in North Carolina. See id. at 534–35, 810 S.E.2d at 214–15; Sheaffer v. Cnty. of Chatham, 337 F. Supp. 2d 709, 730 (M.D.N.C. 2004); Still v. Lance, 279 N.C. 254, 259 182 S.E.2d 403, 406 (1971); Peele v. Provident Mut. Life Ins. Co., 90 N.C. App. 447, 451, 368 S.E.2d 892, 894–95 (1988).

To state a fruits of labor claim, a public employee must plausibly allege that "no other state law remedy is available" and plausibly allege "(1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation." Tully, 370 N.C. at 536–37, 810 S.E.2d at 216.

Soto, as the police chief, was a public employee. See, e.g., id. at 528, 536–37, 810 S.E.2d at 210, 216. Soto fails to plausibly allege, however, that no other state law remedy is available. Soto could have brought his first claim as an equal protection claim under Article I, Section 19 of the North Carolina Constitution. See, e.g., Hadley v. City of Mebane, No. 1:18CV366, 2020 WL 1539724, at *18–19 (M.D.N.C. Mar. 31, 2020) (unpublished); Sheaffer, 337 F. Supp. 2d at 730; Disher v. Weaver, 308 F. Supp. 2d 614, 626–27 (M.D.N.C. 2004). Thus, Soto cannot pursue a claim under the fruits of labor clause. See, e.g., Hadley, 2020 WL 1539724, at *18–19.

Alternatively, Soto's claim fails under the policies alleged. Soto alleges that he is disabled, over 40 years old, and Hispanic. See Am. Compl. ¶ 18. Soto cites two policies in support of count

7

one: (1) Rolesville's probationary pay policy and (2) Rolesville's policy against harassment. See id. at ¶¶ 24–25, 86–87.

The probationary pay policy states "upon successful completion of the [p]robationary [p]eriod, or six months of satisfactory performance a newly hired employee shall become eligible for an increase of up to five percent not to exceed the maximum salary for the pay range." Id. at ¶ 24 (emphasis added). This policy is not a promotional policy. It is a discretionary pay policy. Thus, Soto cannot use it to seek relief under Article I, Section 1. See Tully, 370 N.C. at 536–37, 810 S.E.2d at 216; Inspection Station No. 31327 v. N.C. Div. of Motor Vehicles, 244 N.C. App. 416, 426, 781 S.E.2d 79, 86 (2015); Internet E., Inc. v. Duro Commc'ns, Inc., 146 N.C. App. 401, 405–06, 553 S.E.2d 84, 87 (2001).[4]

The policy against harassment "prohibits harassment in any form that is based on race, . . . age, [or] disability." Am. Compl. ¶ 86. The policy against harassment is not a policy concerning the employment promotional process. See Tully, 370 N.C. at 536–37, 810 S.E.2d at 216. Thus, Soto cannot use it to seek relief under Article I, Section 1. Accordingly, the court dismisses count one.

## B.

In count two, Soto seeks relief under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment against the defendants. See Am. Compl. ¶¶ 143–58. Soto contends that defendants discriminated against him because of his ethnicity (i.e., Hispanic) and his disability (i.e., being blind in one eye). See id.

---

[4] In 2023, the Supreme Court of North Carolina held that the North Carolina Court of Appeals decision in Mole' v. City of Durham, 279 N.C. App. 583, 866 S.E.2d 773 (2021), was "without precedential value." Mole' v. City of Durham, 384 N.C. 78, 79, 884 S.E.2d 711, 711 (2023) (per curiam). Thus, the court has not relied on the analysis of the North Carolina Court of Appeals in Mole'.

A claim against a public official sued in his official capacity is "essentially a claim against" the government entity the official represents. Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); see Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006). Thus, Soto's claim against the Commissioners, Arnold, Stevens, and Currin in their official capacities is functionally brought against Rolesville. See Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469 ("For purposes of [s]ection 1983, these official capacity suits [against government officials] are treated as suits against the municipality." (quotation and alteration omitted)); see also Hafer v. Melo, 502 U.S. 21, 25 (1991). Accordingly, the court dismisses Soto's official-capacity claim in count two against the Commissioners, Arnold, Stevens, and Currin.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see City of Escondido v. Emmons, 139 S. Ct. 500, 503–04 (2019) (per curiam); Kisela v. Hughes, 584 U.S. 100, 103–08 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–63 & n.7 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017); Ziglar v. Abbasi, 582 U.S. 120, 150–51 (2017); Camreta v. Greene, 563 U.S. 692, 707 (2011); Pearson v. Callahan, 555 U.S. 223, 236 (2009); King v. Riley, 76 F.4th 259, 264–68 (4th Cir. 2023); Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682–84 (4th Cir. 2023); Burns-Fisher v. Romero-Lehrer, 57 F.4th 421, 424 (4th Cir. 2023); Tobey v. Jones, 706 F.3d 379, 385 (4th Cir. 2013). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 584 U.S. at 103–04.

9

In analyzing qualified immunity, the court asks (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson, 555 U.S. at 232 (quotations omitted); see Wood v. Moss, 572 U.S. 744, 757 (2014); Knibbs v. Momphard, 30 F.4th 200, 214 (4th Cir. 2022); Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4–5 (2021) (per curiam); King, 76 F.4th at 265; Sharpe, 59 F.4th at 682–84. Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Rivas-Villegas, 595 U.S. at 4–6; King, 76 F.4th at 266–68; Sharpe, 59 F.4th at 682–84.

To determine whether an official's conduct violates clearly established law, a court must first specifically define the right. See, e.g., City of Tahlequah v. Bond, 595 U.S. 9, 12–13 (2021) (per curiam). Then, based on that specifically defined right, the court must determine whether existing precedent placed the statutory or constitutional question "beyond debate." Kisela, 584 U.S. at 104 (quotation omitted). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Bond, 595 U.S. at 12 (quotation omitted); see Wesby, 583 U.S. at 63. An official is entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." Kisela, 584 U.S. at 104 (quoting Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam)); Wesby, 583 U.S. at 63–66.

The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." Wesby, 583 U.S. at 66 n.8; see Kisela, 584 U.S. at 103–08; Taylor v. Barkes, 575 U.S. 822, 825–27 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 613–14 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam). In the Fourth Circuit, "existing precedent" includes precedent of the United States Supreme Court, the Fourth Circuit, and the highest court of the state in which the action arose. See Doe ex rel. Johnson, 597 F.3d at 176. It also includes "a consensus of persuasive authority from other jurisdictions." Sharpe, 59 F.4th at 683.

In Pearson, the Supreme Court held that the qualified-immunity analysis need not proceed in a particular sequence, and that "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; see King, 76 F.4th at 265. Qualified immunity shields a defendant if the answer to either prong is "no." See al-Kidd, 563 U.S. at 735; Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (citation omitted). Purposeful discrimination "implies that the decisionmaker . . . selected or affirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Adm'r of Mass.

11

v. Feeney, 442 U.S. 256, 279 (1979). If a plaintiff demonstrates intentional unequal treatment, the court must then determine whether the treatment is "justified under the requisite level of scrutiny." Morrison, 239 F.3d at 654.

As for Soto's equal protection claim based on his alleged disability, Soto fails to plausibly allege an equal protection claim. See Am. Compl. ¶¶ 39–86, 96–99, 113–17. Thus, the claim fails.

As for Soto's equal protection claim based on his ethnicity, Soto seeks relief for an alleged hostile work environment and for his alleged constructive discharge. See id. The court addresses each contention in turn.

To state a hostile work environment claim under section 1983 and the Fourteenth Amendment, an employee must plausibly allege that (1) he experienced unwelcome conduct, (2) the conduct was based on a protected characteristic under the Fourteenth Amendment, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See Jennings v. Univ. of N.C., 482 F.3d 686, 701–02 (4th Cir. 2007) (en banc); Love-Lane, 355 F.3d at 786; see also Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 229 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished). An employee

12

also must plausibly allege that his protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. The Fourteenth Amendment does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a

13

change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds, 629 F.3d at 385–86; Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic. Id. at 82; see Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772–73 (4th Cir. 1997).

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of

14

employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

Soto alleges that from February 2019 to August 31, 2020, (1) Arnold told Soto to "learn to dance the salsa"; (2) Arnold demanded Soto meet with Arnold daily without advanced notice; (3) Arnold asked Soto's colleagues about Soto's whereabouts during the work day; (4) Arnold demanded to walk freely around the police department and look into windows observing the offices when Soto was not present in violation of facility procedures; (5) Stevens audited the police department's expenditures, personnel actions, funding, mobile hotspot use, selling of police vehicles; (6) Arnold monitored reporting times of police department staff; (7) Arnold demanded Soto report his statements to an elected official about the police department; (8) the Commissioners changed the pay scale for an evidence-custodian position; (9) Arnold made a COVID-19 pandemic joke and "the punch line was giving [Soto] the middle finger"; (10) Arnold called on Soto first at every event and meeting in a condescending manner; (11) Arnold critiqued Soto's dress, style of writing, and conduct; (12) Arnold denied knowing any Hispanic people other than "Chicano ranchers"; (13) Arnold recognized four other leaders as a clique; (14) Arnold bowed his chest out at Soto. Am. Compl. ¶¶ 40–41, 73, 80; see id. at ¶¶ 43–51, 55, 57, 59–60, 65, 68–69, 82–83.

Even viewing these allegations in the light most favorable to Soto, Soto fails to plausibly allege a hostile work environment claim under section 1983 and the Fourteenth Amendment based on his ethnicity. See, e.g., Breeden, 532 U.S. at 271–72; Oncale, 523 U.S. at 81–82; Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 223–27 (4th Cir. 2016); Boyer-Liberto, 786 F.3d at 277–

15

81; Ali v. WorldWide Language Res., LLC, ___ F.Supp.3d ___, 2023 WL 5120224, at *12 (E.D.N.C. Aug. 9, 2023); Benjamin v. Sparks, 173 F. Supp. 3d 272, 284–86 (E.D.N.C. 2016), aff'd, 986 F.3d 332 (4th Cir. 2021). Thus, Soto's hostile work environment claim under section 1983 and the Fourteenth Amendment fails.

As for Soto's constructive discharge claim under section 1983 and the Fourteenth Amendment, a constructive discharge claim under section 1983 requires Soto to plausibly allege his "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Green v. Brennan, 578 U.S. 547, 555 (2016) (quotation omitted); see Pa. State Police v. Suders, 542 U.S. 129, 147 (2004); Kelly v. Town of Abingdon, 90 F.4th 158, 169 n.7 (4th Cir. 2024); Chapman, 48 F.4th at 235; E.E.O.C. v. Consol Energy, Inc., 860 F.3d 131, 144–45 (4th Cir. 2017). The standard for intolerable working conditions sufficient to create a constructive discharge is higher than that for a hostile work environment claim. See Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019). "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions" do not constitute objectively intolerable conditions. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quotation omitted).

"Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, [the Fourth Circuit] has insisted that it be carefully cabined." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004) (quotation omitted), abrogated on other grounds by Green, 578 U.S. 547. A plaintiff who fails to plausibly allege a hostile work environment necessarily fails to plausibly allege a constructive discharge. See, e.g., Suders, 542 U.S. at 147; Sunkins v. Hampton Roads Connector Partners, ___ F. Supp. 3d ___,

16

2023 WL 7411761, at *6–8 (E.D. Va. Nov. 9, 2023). This principle dooms Soto's constructive discharge claim. Thus, the court dismisses count two.

## C.

In count three, Soto alleges intentional infliction of emotional distress ("IIED") against all defendants. See Am. Compl. 21. Soto alleges that (1) Arnold denied Soto a 5% pay increase; (2) Arnold removed information concerning Soto's pay grievance from Soto's personnel file; (3) Arnold disallowed anyone from reviewing Soto's personnel file; (4) Arnold told Soto to "learn to dance the salsa"; (5) Arnold demanded Soto meet with Arnold daily without advanced notice; (6) Arnold asked Soto's colleagues about Soto's whereabouts during the work day; (7) Arnold demanded to walk freely around the police department and look into windows observing the offices when Soto was not present in violation of facility procedures; (8) Stevens audited the police department's expenditures, personnel actions, funding, mobile hotspot use, and selling of police vehicles; (9) Arnold monitored reporting times of police department staff; (10) Arnold demanded Soto report his statements to an elected official about the police department; (11) the Commissioners changed the pay scale for an evidence-custodian position; (12) Arnold made a COVID-19 pandemic joke and "the punch line was giving [Soto] the middle finger"; (13) Arnold called on Soto first at every event and meeting in a condescending manner; (14) Arnold critiqued Soto's dress, style of writing, and conduct; (15) Arnold denied knowing any Hispanic people other than "Chicano ranchers"; (16) Arnold recognized four other leaders as a clique; (17) Arnold bowed his chest out at Soto; (18) Currin asked Soto to continue working with Arnold to avoid litigation; and (19) Currin and the Town Council decided to terminate Soto's employment. Id. at ¶¶ 40–41, 73, 80; see id. at ¶¶ 27, 32, 38, 43–51, 55, 57, 59–60, 65, 68–69, 82–83, 97–98.

17

An IIED claim requires "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992); see Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quotation omitted); compare Chidnese v. Chidnese, 210 N.C. App. 299, 316, 708 S.E.2d 725, 738 (2011) ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (quotation omitted)), with Clark v. Clark, 280 N.C. App. 384, 397, 867 S.E.2d 743, 754 (2021) (holding that harassing and stalking after a separation, scaring someone by stating "We are going to continue doing everything in our power to make your life miserable," and posting advertisements and photographs online containing personal information presented "more than a scintilla of evidence of 'extreme and outrageous behavior'"), and Chapman ex rel. Chapman v. Byrd, 124 N.C. App. 13, 20, 475 S.E.2d 734, 739 (1996) (holding that repeating rumors that someone at the workplace had AIDS or was HIV positive and failing to investigate the truth and falsity of the alleged rumors before repeating them constituted extreme and outrageous behavior). Whether conduct is "extreme and outrageous" is a question of law for the court. Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Severe emotional distress means "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals

trained to do so." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

"Under North Carolina law, it is extremely rare to find conduct in the employment context that rises to the level of outrageousness necessary to support an IIED claim." Miller v. Gerber Collision (Ne.), Inc., No. 4:19-CV-18, 2019 WL 2527105, at *3 (E.D.N.C. June 19, 2019) (unpublished) (collecting cases); see Ortiz v. Vance Cnty. Sch., Admin. Unit, No. 5:18-CV-91, 2019 WL 1940596, at *9 (E.D.N.C. Apr. 30, 2019) (unpublished); Everett v. Redmon, No. 7:16-CV-323, 2017 WL 2313468, at *9 (E.D.N.C. May 26, 2017) (unpublished); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 340–41 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004); see, e.g., Hogan, 79 N.C. App. at 493–94, 340 S.E.2d at 122–23 (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains). In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, involving sexual advances, obscene language, and inappropriate touching. See Miller, 2019 WL 2527105, at *3; Moody-Williams v. LipoScience, 953 F. Supp. 2d 677, 683 (E.D.N.C. 2013); Payne v. Whole Foods Mkt. Grp., 812 F. Supp. 2d 705, 710 (E.D.N.C. 2011), aff'd, 471 F. App'x 186 (4th Cir. 2012) (per curiam) (unpublished); see, e.g., Guthrie v. Conroy, 152 N.C. App. 15, 22–23, 567 S.E.2d 403, 409–10 (2002) (collecting cases); Groves v. Travelers Ins. Co., 139 N.C. App. 795, 800–01, 535 S.E.2d 105, 107–09 (2000) (McGee, J., dissenting) (collecting cases), rev'd per curiam on reasoning of dissent, 354 N.C. 206, 552 S.E.2d 141 (2001); Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123. Moreover, "termination, allegedly in violation of federal law alone, does not necessarily constitute extreme and outrageous

conduct under North Carolina law." Efird, 342 F. Supp. 2d at 427; see Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 545 (E.D.N.C. 2008); Pardasani v. Rack Room Shoes Inc., 912 F. Supp. 187, 192 (M.D.N.C. 1996) ("Plaintiff has alleged that he was given poor performance evaluations, not given promotions which were given to others, excluded from training and finally terminated from his employment. Assuming these allegation[s] to be true, these actions do not rise to the level sufficient to exceed all bounds usually tolerated by decent society.").

Even viewing Soto's amended complaint in the light most favorable to Soto, Soto does not plausibly allege an IIED claim against any defendant. Thus, the court dismisses Soto's IIED claim.

D.

In count four, Soto alleges a negligent infliction of emotional distress ("NIED") claim against all defendants. See Am. Compl. 21–22. To state an NIED claim, a plaintiff must plausibly allege that "(i) defendant negligently engaged in conduct; (ii) it was reasonably foreseeable the conduct would cause plaintiff severe emotional distress; and (iii) the conduct in fact caused plaintiff to suffer such distress." Andersen v. Baccus, 335 N.C. 526, 531, 439 S.E.2d 136, 139 (1994); see Johnson, 327 N.C. at 304, 395 S.E.2d at 97; Acosta v. Byrum, 180 N.C. App. 562, 567, 638 S.E.2d 246, 250 (2006). "When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently, [the complaint] is insufficient to state a claim for negligent infliction of emotional distress." Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002); see Mitchell v. Lydall, Inc., 16 F.3d 410, 1994 WL 38703, at *3 (4th Cir. 1994) (per curiam) (unpublished table decision); Sasser v. City of Whiteville, No. 7:10-CV-95, 2010 WL 4809039, at *3 (E.D.N.C. Nov. 18, 2010) (unpublished). An NIED claim is "subject to dismissal when 'the material factual allegations charge nothing but intentional acts.'" Fisher v. Frontline Nat'l, No. 1:18-CV-193, 2019 WL

1048848, at *4–5 (W.D.N.C. Mar. 5, 2019) (unpublished) (quoting Mitchell, 1994 WL 38703, at *3).

All the actions that Soto alleges are intentional acts. Thus, Soto has failed to state an NIED claim against any defendant. See Am. Compl. 21–22. Accordingly, the court dismisses count four.

Alternatively, under North Carolina law,

> a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties.

Meyer v. Walls, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997) (quotation omitted). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976). A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). The act must be "done of wicked purpose, or . . . done needlessly, manifesting a reckless indifference to the rights of others." Id., 321 S.E.2d at 891 (quotation omitted). North Carolina's public-official-immunity analysis examines the officer's subjective state of mind. See Andrews v. Crump, 144 N.C. App. 68, 76, 547 S.E.2d 117, 123 (2001); see also Alford v. Cumberland Cnty., No. 06-1569, 2007 WL 2985297, at *7 (4th Cir. Oct. 15, 2007) (unpublished).

Soto fails to plausibly allege that any individual defendant's conduct was corrupt or malicious or that any individual defendant acted outside of and beyond the scope of his or her duties. See, e.g., Meyer, 347 N.C. at 112, 489 S.E.2d at 888; Grad, 312 N.C. at 313, 321 S.E.2d at

21

890; <u>Smith</u>, 289 N.C. at 331, 222 S.E.2d at 430. Thus, public-official immunity defeats Soto's NIED claim against the individual defendants.

III.

In Soto's motion to amend with supplemental pleadings, Soto seeks to add the following allegations:

> (1) "Upon information and belief, [Arnold] recently resigned to his position as Town Manager, to be effective Friday, December 1, 2023."
> (2) "Arnold's resignation is relevant and closely related to the [p]leadings in [Soto's] [c]omplaint and [a]mended [c]omplaint."
> (3) "Upon information and belief, [Arnold] resigned because Arnold acted the way Soto alleged in his [c]omplaint and [a]mended [c]omplaint and is leaving his Town Management position because of his actions."

[D.E 29] 1–2.

"An amendment is futile if the amended complaint would fail to state a claim upon which relief can be granted." <u>Johnson v. Allen</u>, 416 F. Supp. 3d 550, 562 (E.D.N.C. 2018); <u>see United States ex rel. Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008); <u>Kariuki v. Dep't of Ins.</u>, No. 5:18-CV-341, 2019 WL 2559807, at *4 (E.D.N.C. June 20, 2019) (unpublished). Soto fails to plausibly allege a causal link between Arnold's alleged December 2023 resignation and Soto's claims. <u>See Iqbal</u>, 556 U.S. at 678; <u>Kashdan v. George Mason Univ.</u>, 70 F.4th 694, 701–02 (4th Cir. 2023); <u>Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC</u>, 615 F. Supp. 3d 379, 384–85 (M.D.N.C. 2022) (collecting cases). Notably, Soto's claims all allegedly arose between June 2018 and December 1, 2020. Accordingly, the court denies as futile Soto's motion to amend with supplemental pleadings.

IV.

In sum, the court DISMISSES as moot defendants' motion to dismiss the original complaint [D.E. 21], DISMISSES as moot plaintiff's motion for extension of time to file a response to

22

defendants' first motion to dismiss and GRANTS plaintiff's motion for extension of time to amend his complaint [D.E. 23], GRANTS defendants' motion to dismiss plaintiff's amended complaint [D.E. 26], and DENIES as futile plaintiff's motion to amend his complaint with supplemental pleadings [D.E. 29]. The court DISMISSES WITH PREJUDICE plaintiff's amended complaint. The clerk shall close the case.

SO ORDERED. This 9 day of April, 2024.

JAMES C. DEVER III
United States District Judge

23